UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CHARLESTON RANCHO, LLC,<br><br>    Plaintiff<br><br>v.<br><br>STANLEY CONVERGENT SECURITY SOLUTIONS, INC.,<br><br>    Defendant, Third-party Plaintiff<br><br>v.<br><br>AARROWHEAD SECURITY, INC. d/b/a VET-SEC PROTECTION AGENCY,<br><br>    Third-party Defendant | Case No.: 2:18-cv-02205-APG-VCF<br><br>**Order Denying Defendant's Motion for Summary Judgment, Denying in Part Third-Party Defendant's Motion for Summary Judgment, and Granting in Part Defendant's Motion to Exclude Expert**<br><br>[ECF Nos. 93, 94, 98] |

Plaintiff Charleston Rancho, LLC owns a building located at 2324 West Charleston Boulevard in Las Vegas. Defendant Stanley Convergent Security Solutions, Inc. monitors the building's alarms and dispatches responses to the alarms. Stanley contracted with Third-Party Defendant AArrowhead Security, Inc. d/b/a Vet-Sec Protection Agency (Vet-Sec) for dispatched response services to the building. ECF No. 43.

In December 2016, the building's alarms sent multiple signals to Stanley. Stanley contacted Charleston Rancho's owner, Phyllis Schwartz, and dispatched Vet-Sec security guards in response but the guards did not report any irregularities. Later, it was discovered that the building had flooded. Charleston Rancho sued Stanley for negligence, breach of contract for its December 2016 response to the alarm, and breach of contract for missing alarm equipment related to an October 2016 incident. ECF Nos. 1 at 9-11; 21 at 5 (dismissing Charleston

Rancho's breach of covenant of good faith and fair dealing claim). Stanley filed a third-party complaint against Vet-Sec for comparative liability in negligence. ECF No. 43 at 4-5.

Stanley now moves for summary judgment on Charleston Rancho's claims, arguing the breach of contract claims fail because it does not have a contract with Charleston Rancho and that, alternatively, it provided the services for which Charleston Rancho paid. ECF No. 93. Stanley also argues the negligence claim fails because there is no evidence it breached any standard of care it owed, or that its actions caused the damages to the property. It also contends Charleston Rancho has no admissible evidence establishing its economic damages related to the loss of rent for its building.

Vet-Sec also moves for summary judgment, arguing that Stanley did not dispatch Vet-Sec for the October 2016 incident and Vet-Sec performed its obligations concerning the December 2016 event. ECF No. 94. Stanley concedes that it does not bring third-party claims against Vet-Sec for the October 2016 incident but opposes Vet-Sec's motion concerning the December 2016 event. ECF No. 96.

Stanley also moves to exclude the testimony of two of Charleston Rancho's experts, arguing they fail to meet the *Daubert* standard because their conclusions do not rely on sufficient facts and data. ECF No. 98.

**I. BACKGROUND**

Phyllis Schwartz is the sole owner of Charleston Rancho, LLC. ECF No. 93-14 at 5-6. Charleston Rancho owns a single piece of property, an office building located at 2324 W. Charleston Boulevard in Las Vegas, Nevada. *Id.* at 8; *see also* ECF No. 93-10 at 2. The building had been vacant for several years prior to December 2016. ECF No. 93-14 at 28. Schwartz testified that while she did not have a signed lease or formal offer, a medical school

indicated to her that it wanted to rent the building around the time of the flood. *Id.* at 26-27, 31-32.

While Schwartz did not have a written contract with Stanley, she believed she had contracted for a burglar alarm and a fire alarm for the building because she made monthly payments for these alarms. *Id.* at 9, 11, 15. Schwartz testified that Stanley "t[oo]k care of the security when [her] husband passed away, and [she] continued paying the bills for them to take care of it, and [she] had a password with them, and if there was a problem" or a "false alarm" then they called her. *Id.* at 14.

Robert P. Schifiliti, a Registered Professional Engineer in Fire Protection, testified that the building had a fire alarm system that was connected to a digital alarm communicator transmitter. ECF No. 93-10 at 1, 3. Stanley monitored signals transmitted by the communicator. *Id.* This communicator could transmit four distinct signals: a fire sprinkler waterflow alarm, a general fire alarm, a supervisory condition, and a trouble condition. *Id.* at 4.

Stanley also monitored the signals transmitted by the building's security system, which used a different control unit. *Id.* Stanley did not monitor any water leak system or sensor, temperature sensor, cameras, or AC power sensors at the building. *Id.* at 4. The fire and security alarm systems had the capability to monitor water leak sensors. *Id.*

On December 10, 2016 at 12:25 p.m., Stanley received a daily test signal from the fire alarm system transmitter indicating that the communicator was operational and in a normal state. ECF Nos. 93-10 at 4; 93-5 at 9. About an hour later, at 1:34 p.m., Stanley received a signal indicating a trouble condition of the fire alarm system. ECF Nos. 93-10 at 4; 93-5 at 9. This signal is not a fire alarm. ECF No. 93-10 at 4. According to Schifiliti, Stanley followed its action plan and called Schwartz and her stepson to report receipt of the trouble signal. ECF Nos. 93-10

3

at 4; 93-5 at 9-10.  At 1:49 p.m., Schwartz requested Stanley dispatch the fire department. ECF No. 93-5 at 9.  It appears that Stanley called the fire department, but they did not go to the building. *Id.*

Later, at 3:02 p.m., Stanley received a loss of AC power signal from the main control unit of the building's security system. ECF Nos. 93-10 at 5; 93-6 at 6.  Stanley again called the building's designated representatives, including Schwartz. ECF Nos. 93-10 at 5; 93-6 at 7-8. Schwartz informed Stanley that she was out of town and could not do anything until she returned. ECF Nos. 93-10 at 5; 93-6 at 7.

At 3:44 p.m., Stanley received another loss of AC power signal from the building's security system control unit, this time from an expansion module of the system. ECF Nos. 93-10 at 5; 93-6 at 7.  Stanley again called the building's designated representatives. ECF Nos. 93-10 at 5; 93-6 at 7.  Schwartz returned the call and requested a call back if other signals came in from the system. ECF Nos. 93-10 at 5; 93-6 at 7.

At 7:33 p.m., Stanley received additional signals from the building indicating power problems. ECF Nos. 93-10 at 5; 93-5 at 9.  These signals were not alarm signals. ECF No. 93-10 at 5.  Stanley made calls and left messages in response to these signals, including to Schwartz and her stepson. ECF Nos. 93-10 at 5; 93-5 at 9-13; *see also* 93-15 at 10-11.

At 10:36 p.m., Schwartz requested a security guard check the building, and Stanley dispatched Vet-Sec to check the building. ECF Nos. 93-10 at 5; 93-5 at 10.  Vet-Sec's patrol guard completed his check at 12:28 a.m. ECF No. 93-12.  The call detail report from this alarm response states that the guard completed a full check of the "site" and there were no signs of forced entry. *Id.*

The next day, at 12:25 p.m., the fire alarm system transmitter transmitted its daily test signal, which retransmitted the existing trouble signal that had been reported the previous day. ECF Nos. 93-10 at 6; 93-5 at 11.  When Stanley called Schwartz, she requested that a security guard check the building. ECF Nos. 93-10 at 6; 93-5 at 11.  Stanley again dispatched Vet-Sec to the building. ECF Nos. 93-10 at 6; 93-5 at 11.  The call detail report from this alarm response call contains the following comments:

> check the front doors and windows are locked and secured check the garage areas there is no vagrants found check the elevator doors are locked and secured check the back doors and windows is locked and there are no signs of forced entry around the building everything is Code 4

ECF No. 93-13.  According to Schifiliti, Code 4 means "all clear." ECF No. 93-10 at 6.

At 3:14 p.m. that day, the building's security system control unit transmitted low battery signals. ECF Nos. 93-10 at 6; 93-6 at 8.  Stanley then made numerous calls, including to Schwartz. ECF Nos. 93-10 at 6; 93-6 at 8.  At 6:46 p.m., the building's security system control unit transmitted a signal for loss of radio supervision because the unit's batteries drained due to power failure. ECF Nos. 93-10 at 6; 93-6 at 8.  Stanley again made numerous calls, including to Schwartz and her stepson. ECF Nos. 93-10 at 7; 93-6 at 9.  Phyllis's stepson eventually returned Stanley's call at 7:47 p.m. ECF Nos. 93-10 at 7; 93-6 at 9.

At 12:25 p.m. the next day, December 12, 2016, the fire alarm system transmitter transmitted its daily test signal, which again retransmitted the existing trouble signal. ECF Nos. 93-10 at 7; 93-5 at 11.  Stanley again called Schwartz and her stepson. ECF Nos. 93-10 at 7; 93-5 at 11-12.  Schwartz told Stanley that she would send her maintenance person to the building because "this has been going on since the weekend." ECF Nos. 93-10 at 7; 93-5 at 12.

Schwartz's maintenance person, Larry Pilar, testified that he arrived at the building within five or six minutes of Schwartz calling and telling him to take a look at the building. ECF No. 93-16 at 4-5. Pilar testified that when he drove down towards the building's underground parking, he could hear and see water flowing. *Id.* at 6-7. He did not hear an alarm. *Id.* at 7. He testified that he checked the restrooms on the first floor and then went to the second floor. *Id.* at 8. He testified that he identified the source of the water as the riser room. *Id.* at 8-9. According to Pilar, the water was chest high and gushing out of the riser room. *Id.* Pilar estimates that he was at the property for 10-15 minutes before shutting off the water from "the main" downstairs. *Id.* at 9-10. At around 7:30 p.m., Schwartz called Stanley to request emergency services and indicated the building was flooded. ECF Nos. 93-10 at 7; 93-5 at 12-13.

According to Schifiliti, the source of the water leak has not been definitively determined and the failure mechanism leading to the water discharge has not been investigated. ECF No. 93-10 at 7. Charleston Rancho retained Tom Tomeo as a construction expert. ECF No. 95-5. Tomeo concluded the water leak came from the failure of a fire mainline that feeds the building's fire sprinkler system. *Id.* at 4. Tomeo stated that it was his "understanding" "that on or about December 9, 2016, a plumbing line failure occurred at the third-floor riser room of" the building. *Id.* He concluded that on December 9, "Stanley either did not properly investigate the entire property or mistakenly did not report water that would have been exiting the building" when Stanley responded to the alarm signal. *Id.* at 4-5. Tomeo also concluded that "[d]epending on how much time elapsed from when the fire-line failed until Stanley was at the property . . . at a minimum water would have been exiting the building and visible at the subterranean parking area near the elevator shaft." *Id.* at 5.

Charleston Rancho also retained Christopher Money to calculate the loss of income it sustained as a result of not being able to lease the property due to water damage. ECF No. 95-7 at 2. Money assumed that the property would have been rented to the University of Nevada Las Vegas beginning in April 2017 for three years, the lease would require no tenant improvements, the property would have been rented for $1.65 per square foot, and the lease would have been a modified triple net lease. *Id.* at 2-3. Based on these assumptions, Money concluded Charleston Rancho lost $1,264,626 in rental income.

Charleston Rancho sued Stanley for negligence, breach of contract for its December 2016 response to the alarm, and breach of contract for missing alarm equipment related to an October 2016 incident. ECF Nos. 1 at 9-10; 21. Stanley filed a third-party complaint against Vet-Sec for comparative liability in Charleston Rancho's negligence claim against Stanley, alleging that if Stanley is liable in negligence, then Vet-Sec is responsible for its comparative or contributory fault. ECF No. 43.

Stanley now moves for summary judgment on Charleston Rancho's claims and to exclude Tomeo and Money's testimony. ECF Nos. 93, 98. Vet-Sec also moves for summary judgment on Stanley's third-party claim. ECF No. 94.

**II. STANLEY'S MOTION TO EXCLUDE EXPERT REPORT (ECF No. 98)**

Stanley moves to exclude the testimony of Charleston Rancho's experts Thomas A. Tomeo and Christopher K. Money under Federal Rule of Evidence 702 and the *Daubert* standard. ECF No. 98. Stanley argues the experts' reports are not based on sufficient facts or data, and do not reliably apply principles and methods to the facts of the case.

/ / / /

/ / / /

### A. Tomeo Report

Stanley argues that Tomeo's opinion is based on unreasonable and incorrect assumptions. Stanley contends that because Tomeo relied on speculative, inadmissible assumptions, he has not reliably applied principles or methodology in forming his report. Stanley provides three examples: First, it argues that no evidence supports Tomeo's statement that the flood resulted from a December 9th plumbing line failure, and Tomeo does not cite a source for this statement. Second, it argues Tomeo did not provide a basis for his understanding that the water leak originated from a sprinkler pipe on the property's top level and produced no evidence in support. Finally, it argues there is no evidence that Stanley received an alarm signal on December 9, and that it received only a trouble signal (as opposed to an alarm signal) on December 10.

Stanley further contends that Tomeo's report is fatally flawed because it does not provide evidence regarding the length of time between the beginning of the leak and when water would have been visible in the garage, and therefore cannot form a conclusion regarding whether guards could have seen water in the garage. Stanley also argues that Tomeo does not provide evidence of the building's water system's flow rate, so his conclusion regarding how much water the system discharged is unsupported. Stanley points out additional issues with Tomeo's report, such as the fact that there is no evidence of the flow rate available, and, it argues, the available evidence does not support Tomeo's hypothesis of the flow rate.

Charleston Rancho responds that Tomeo's report is based on sufficient facts. It contends there is no video or eyewitness evidence regarding the magnitude of the leak, so any expert opinion on the timing and magnitude of the leak must be based on assumptions. Charleston Rancho contends that Tomeo may assume the leak began on December 9 because an alarm was

sent to Stanley on that day, and Stanley does not have evidence that the leak did not begin on that date.

Federal Rule of Evidence 702 permits testimony based on "scientific, technical, or other specialized knowledge" by experts qualified by "knowledge, skill, experience, training, or education" if the testimony is both relevant and reliable. Expert testimony is reliable if it is "based on sufficient facts or data," is "the product of reliable principles and methods," and the expert "has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d).

I act as a "gatekeeper" to exclude expert testimony that is not reliable. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). Whether to admit expert testimony, as well as deciding how to determine if the testimony is reliable, lies within my discretion. *Id.* at 152. The party offering the expert testimony bears the burden of establishing its admissibility. *Lust By & Through Lust v. Merrell Dow Pharm., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996). In performing my gatekeeping function, while I may reject wholly speculative or unfounded testimony, I abuse my discretion if I overlook relevant data submitted as the foundation of an expert's report. *Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1025 (9th Cir. 2022). That is, Rule 702's "sufficient facts or data" element requires foundation, not corroboration. *Id.* Rule 702 instructs me to determine whether experts have "sufficient factual grounds on which to draw conclusions." *Id.* at 1025-26. And while I "may conclude that there is simply too great an analytical gap between the data and the opinion proffered," I may not "engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Id.* at 1026.

1    Tomeo's report does not rely on sufficient facts or data because the facts on which he
2 bases his conclusions are unfounded. Specifically, Tomeo's report states that he has an
3 "understanding that on or about December 9, 2016, a plumbing line failure occurred at the third-
4 floor riser room of the" building. ECF No. 98-8 at 3. But Tomeo does not state what his basis is
5 for this understanding. Especially troublesome is that he provides no basis for his conclusion
6 that the failure occurred specifically on December 9. Further, he noted that according to the
7 project's approved plans, the fire sprinkler system was to have a water feed of 1,625 gallons per
8 minute. *Id.* But he does not state what the flow rate of the leak was. That is, he does not state
9 whether the leak was catastrophic—such that water flowed out of the leak at the maximum flow
10 rate immediately—or whether the leak's flow rate increased gradually, or something else.
11 Tomeo cites no facts to ground his assumptions. Without this foundation, he does not have
12 sufficient facts to ground any of his conclusions, including that Stanley did not properly
13 investigate the property or did not report water that would have been exiting the building. *Id.* at
14 4. Tomeo's conclusion that water would have been exiting the building and visible at the
15 underground garage "[d]epending on how much time elapsed from when the fire-line failed until
16 Stanley was at the property" identifies a critical question in this case, and one that Tomeo's
17 report cannot properly answer. I therefore grant Stanley's motion to exclude Tomeo's testimony.
18    B.  Money Report
19    Stanley argues that Money utilized flawed assumptions in reaching his conclusions, and
20 that he admitted his assumptions were unreliable and not independently verified. Stanley
21 contends Money's assumptions are based on unsworn hearsay and Money was not able to
22 substantiate the assumptions provided or assess their validity. It argues that Schwartz's
23 testimony that purports to support Money's report is incomplete, speculative, unsworn, and not

substantiated by other documents. Finally, Stanley contends Money has no training, experience, or qualifications to value a prospective lease. Stanley argues that because Money's conclusions are based on speculative and unsupported assumptions about a non-existent lease, his conclusions should be excluded.

Charleston Rancho responds that Schwartz will testify at trial regarding the facts that underlie Money's conclusion. But at this point, Money's report is based entirely on assumptions and he does not have sufficient facts to form the foundation of his report. At the July 29, 2022 hearing on this matter, Stanley's counsel asserted that Schwartz has not been designated as an expert. And the current record does not provide a foundation for Money's assumptions either: while Schwartz testified in her deposition that a medical school was interested in renting the building, Charleston Rancho has not pointed to record testimony about the other assumptions underlying Money's report, such as the length of the lease term, the lack of tenant improvements required, and the fact that the lease would have been a modified triple net lease.[1]

If Charleston Rancho can put facts into the record that support Money's assumptions, then his testimony might be admissible. I have doubts about Charleston Rancho's ability to do this if Schwartz was not disclosed as either a lay or expert witness. But for now, because

---

[1] Charleston Rancho included an "estimates of damages" document. ECF No. 95-6. This document lists the loss of rent at $1.75 per square foot totaling $421,542, as well as an entry for ".41/sp cam" totaling $104,746.80. *Id.* at 2. While not entirely clear, it appears Schwartz's stepson created this document. ECF No. 94-1 at 68 (103:18-22). Schwartz testified that the rate per square foot contained in this list is what the medical school was offering and what she advertised as the rent. *Id.* at 71 (115:23-116:16). However, these assumptions are not the same as those that underlie Money's report. ECF No. 98-11 at 2 (rate per square foot would have been $1.65 per month; total loss of rent would have been $1,264,626). Given the lack of clarity surrounding this document, as well as the fact that the document contains assumptions different than those underlying Money's report, the document does not form a sufficient foundation for Money's conclusions.

Charleston Rancho may be able to put facts into the record to support Money's assumptions, I deny Stanley's motion to exclude Money's testimony at this time.

### III. STANLEY'S MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* At this stage, "[C]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are not my functions; those are "jury functions." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034 (9th Cir. 2006)

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018) ("To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 440-41 (9th Cir. 2017).

  A. <u>Breach of Contract Claims</u>

Stanley argues that Charleston Rancho's breach of contract claims fail because there is no evidence of a contract between Charleston Rancho and Stanley. Stanley contends Charleston

Rancho disavowed having a contract with Stanley. It argues that because Charleston Rancho has produced no evidence of a contract or articulated what duties Stanley owed, Charleston Rancho cannot show Stanley breached any contract. Stanley argues in the alternative that there is no dispute that Stanley provided the monitoring services that Charleston Rancho paid for.[2]

Charleston Rancho responds that while it has no written contract with Stanley, the fact that it paid a monthly fee and incurred additional services for additional fees evidences the parties had some sort of agreement. Charleston Rancho concedes it is not certain about the terms of their agreement, but claims the agreement allows it to request a security guard physically inspect the property for an additional fee. Charleston Rancho argues that this term requires Stanley to send a guard to the property and that the guard do a full physical inspection of the property. It also contends that either Stanley did not send a guard or the guard failed to properly inspect the property. Charleston Rancho argues the following issues of material fact remain: (1) whether the parties had an oral agreement; (2) the terms of that agreement regarding the duties of a security guard during a physical inspection of the property; (3) whether Stanley or Vet-Sec actually sent a security guard to inspect the property; and (4) whether the security guards properly inspected the property.

To prevail on a breach of contract claim in Nevada, a plaintiff much show (1) a valid and existing contract; (2) a breach by the defendant; and (3) damages resulting from the breach. *See Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)).

---

[2] Stanley also objects to Schwartz's declaration in response. I do not rely on her declaration in my decision so I do not address this objection.

13

Viewing the evidence in the light most favorable to Charleston Rancho, there is a question of fact whether Charleston Rancho had a contract for a fire and burglar alarm with Stanley.[3] And Stanley has not sustained its burden of showing no genuine dispute remains regarding the October 2016 incident because it has not identified any portion of the record related to that incident. I therefore deny Stanley's motion for summary judgment on Charleston Rancho's breach of contract claim related to the October 2016 incident.

As to the December 2016 incident, it is reasonable to infer that if Charleston Rancho contracted with Stanley for fire and burglar alarm systems and monitoring, then Stanley was required to provide them and perform reasonable inspections in response to any alarms. There is evidence that Stanley thought its obligation included responding to alarms and conducting reasonable inspections. *See, e.g.*, ECF Nos. 93-5, 93-6 (alarm log history indicating Stanley called Schwartz and other representatives in response to alarm signals, and dispatched responses). As explained below in greater detail, a reasonable jury could find that Stanley did not fulfill its obligations under the contract, if one existed, to perform reasonable inspections in December 2016. *Compare, e.g.*, ECF Nos. 94-1 at 186 (Vet-Sec's December 11, 2016 call detail indicating a guard checked the building's exterior) *with id.* at 58 (65:1) - 60 (71:7) (Schwartz explaining her doubts related to whether Stanley or Vet-Sec completed a sufficient inspection).

---

[3] *Compare id.* at 11 (Schwartz testifying that if Charleston Rancho had a contract for a fire or burglar alarm, it would have been in her husband's files, but there was not a contract in his files), 14 (Schwartz testifying she never signed a contract), 15 (Schwartz testifying that she did not have a contract, but was billed monthly and was in contact with Stanley when there was a false alarm) *with* ECF Nos. 93-17 at 5-6 (recurring service invoice from Stanley for monitoring services of Charleston Rancho for November 2016); 93-3, 93-4 (Stanley service history reports for service at the property from November 2016-February 2017); 95-1 (Stanley invoice including fees for a service trip, labor, and a battery for services at the building).

Stanley therefore has not sustained its burden at this stage, so I deny its motion for summary judgment on its breach of contract claim delated to the December 2016 incident.

### B. Negligence Claim

Stanley argues that Charleston Rancho has no expert evidence regarding the standard of care in the alarm monitoring industry, and no evidence that Stanley breached any applicable standard of care. Stanley contends Charleston Rancho has no evidence that the alarm systems did not work in December 2016, or that Stanley failed to perform as it was supposed to in response to a flood. Stanley contends its alarm systems were programmed as required by local codes and were operational one hour prior to the signals received relating to the flooding event. Stanley argues that its calling Charleston Rancho's representatives 33 times over two-and-a-half days after the first signal, and communicating information to Schwartz and her stepson, demonstrate that it acted reasonably and appropriately as an alarm monitoring service provider.

Stanley also argues there is no evidence that its acts caused any damage. It contends that there is no evidence of the cause or timing of the flood; thus, Charleston Rancho has no evidence that Stanley's actions could have avoided Charleston Rancho's damages. Stanley notes that it did not monitor any water leak systems, temperature sensors, camera, or AC power sensors at the building. It contends Charleston Rancho cannot establish that the flooding event was related to the trouble or AC power loss signals Stanley received. Stanley argues there is no evidence of the cause for the power loss at the building, the source of the water leak, the cause of the leak, the timing of the leak, or the rate of the leak. Stanley notes there is conflicting testimony regarding what caused the leak.

Charleston Rancho responds that it is alleging that Stanley's failure to properly inspect the property after the alarms caused greater damage to the property than would have happened

had it properly inspected the property. Charleston Rancho argues that by accepting the responsibility to dispatch security guards to inspect the property, Stanley accepted the duty to properly inspect. Charleston Rancho points to Pilar's description of the flooding and the photos of the building as evidence that Stanley either did not send a security guard to the building or that the guard did not properly inspect the building. It argues a dispute remains as to when the valve failed and whether Stanley breached its duty when the security guards inspected the property and reported no problems.

In Nevada, a plaintiff bringing a negligence claim must satisfy four elements: "(1) an existing duty of care, (2) breach, (3) legal causation, and (4) damages." *Turner v. Mandalay Sports Entm't*, 180 P.3d 1172, 1175 (Nev. 2008). In Nevada, "the standard of care must be determined by expert testimony unless the conduct involved is within the common knowledge of laypersons." *Daniel, Mann, Johnson & Mendenhall v. Hilton Hotels Corp.*, 642 P.2d 1086, 1087 (Nev. 1982). "Where . . . the service rendered does not involve esoteric knowledge or uncertainty that calls for [a] professional's judgment, it is not beyond the knowledge of the jury to determine the adequacy of the performance." *Id.*

Charleston Rancho argues that Stanley owed the duty to properly inspect the property. Stanley has not presented case authority or any reason why this security alarm industry is so esoteric or uncertain that expert evidence is required to establish this standard of care. A reasonable inference can be drawn that Stanley's duty would have included inspecting the garage when checking the building or responding differently than it did to the alarm signals it monitored and received. There is some dispute over when water was visible in the garage. *Compare* ECF No. 93-16 at 7-8 (Pilar testifying that a substantial amount of water was flowing in the garage and on the second floor on December 12, 2016) and 12 (Pilar testifying that water had to have

been leaking for a few days by the time he arrived on December 12, 2016) *with* ECF No. 93-13 (Vet-Sec call detail from December 12 containing comments indicating the guard "check[ed] the garage area" and found "no vagrants," suggesting the guard did not see water in the garage). A reasonable jury could find Stanley breached its duty of care to properly inspect the building because if water was visible on December 10 or 11 when Stanley sent Vet-Sec to the building, the jury could conclude that Stanley should have responded differently than it did. A reasonable jury could also conclude that Stanley did not properly inspect the property regardless of whether water was visible on December 10 or 11, given the alarm activity on those days. Stanley argues that it called Schwartz in response to the alarms and its alarms complied with regulations, thus fulfilling its duty. But that is a question for the jury.

There is a dispute over the cause of the leak. *Compare* ECF No. 93-16 at 8-9 (Pilar testifying that he believes the leak came from a valve in the riser room) *with* ECF No. 93-14 at 36 (Schwartz testifying she was told the sprinklers caused the flood). There is also a dispute over the timing of the leak. *Compare* ECF No. 93-16 at 12 (Pilar testifying that water had to have been leaking for a few days by the time he arrived on December 12, 2016) *with* ECF No. 93-13 (Vet-Sec call detail containing comments indicating the guard "check[ed] the garage area" on December 12 and did not mention seeing water in the garage). A reasonable jury could find that Stanley's actions in responding to the alarm and inspecting the building caused greater damage to the building than would have occurred had Stanley properly inspected the building. Given these remaining questions, I deny Stanley's motion for summary judgment on its negligence claim.

/ / / /

/ / / /

C. Loss of Rent Economic Damages

Stanley argues Charleston Rancho has no admissible evidence to support its $1.2 million claim for damages in lost rent. It argues Charleston Rancho has not produced evidence to support its speculative assumptions of the purported lease terms it claims it would have signed. In response, Charleston Rancho points to Schwartz's testimony to establish that a medical school wanted to lease the property. It contends that there are genuine issues of material fact over whether the medical school would have leased the property and for how much.

Schwartz testified that the building had been vacant for several years prior to the flood. ECF No. 93-14 at 28. She testified that while she did not have a signed lease or formal offer, a medical school had indicated it wanted to rent the building around the time of the flood. *See id.* at 26-27 (Schwartz testifying that medical school was coming to building to see how furniture would fit); *id.* at 31-32 (Schwartz testifying that medical school told her they were interested in the building); ECF No. 94-1 at 71 (116:17-117:12) (Schwartz testifying that medical school's actions, such as bringing 15 people to view the building and viewing the building more than 12 times, indicated it was going to give her an offer); *see also id.* at 72 (118:3-10) (Schwartz testifying that she spoke to the medical school after the building was repaired but they had already rented other space). She also testified that the medical school offered to rent the building at $1.75 per square foot, which is what she advertised the building for. *See* ECF Nos. 95-6 at 2; 94-1 at 71 (115:23-116:16). Charleston Rancho's evidence to support its lost rent claim is therefore not pure speculation. Further, at the July 29, 2022 hearing, Charleston Rancho submitted that Schwartz could testify at trial regarding the facts that underlie her claim for $1.2

million in lost rent.[4]  As I explained above, although it is unclear whether Schwartz will be able to testify to these matters, Charleston Rancho may be able to put facts into the record to support its lost rent damages.  The jury will decide what weight to give that evidence.  I therefore deny Stanley's motion for summary judgment on Charleston Rancho's lost rent damages.

**IV. VET-SEC'S MOTION FOR SUMMARY JUDGMENT**

Vet-Sec first argues that Stanley did not dispatch Vet-Sec for the October 2016 incident so it cannot be liable for damages related to that incident.  It also argues there are no genuine issues of material fact regarding Stanley's claim for comparative liability for the December 2016 incident because Vet-Sec performed its obligations by sending guards to the property to perform exterior checks.  It points to the fact that Stanley's corporate designee testified that Vet-Sec did what it was supposed to do on December 9-12, 2016 and that Vet-Sec's actions followed its action plan.  Vet-Sec argues that because it did not have access to the building's interior, its only obligation was to inspect the building's exterior, which it did.  Vet-Sec contends it did not breach its duty to Stanley because it complied with the parties' agreement.

Stanley concedes that it does not bring third-party claims against Vet-Sec for the October 2016 incident, so I grant Vet-Sec's motion for summary judgment on Stanley's third-party claims against it for the October 2016 incident.  Stanley responds that if I deny its motion for summary judgment against Charleston Rancho, then I also must necessarily deny Vet-Sec's motion based on its third-party liability that arises solely from Charleston Rancho's negligence claim against Stanley.

---

[4] Charleston Rancho asserted this while arguing against Stanley's motion to exclude Money's report.

Stanley's third-party complaint against Vet-Sec is for comparative liability on Charleston Rancho's negligence claim. Vet-Sec argues that it complied with its contractual duties when responding on December 10-12, 2016. But it has not presented authority that its compliance with the parties' agreement necessarily means it did not act negligently.

As I explained above, there is some dispute over when water was visible in the garage. A reasonable jury could find Vet-Sec breached the duty of care it owed to Stanley because if water was visible on December 10 or 11 when Vet-Sec guards inspected the building, the jury could conclude that Vet-Sec should have acted differently than it did, and that its actions caused damage to Charleston Rancho. I therefore deny Vet-Sec's motion for summary judgment on Stanley's third-party comparative liability claim.

## V. CONCLUSION

I THEREFORE ORDER that defendant Stanley Convergent Security Solutions, Inc.'s motion for summary judgment **(ECF No. 93) is DENIED.**

I FURTHER ORDER that third-party defendant AArrowhead Security, Inc. d/b/a Vet-Sec Protection Agency's motion for summary judgment **(ECF No. 94) is GRANTED in part and DENIED in part**, as discussed above.

I FURTHER ORDER that Stanley's motion to exclude plaintiff Charleston Rancho's expert testimony **(ECF No. 98) is GRANTED and DENIED in part**, as discussed above.

DATED this 4th day of August, 2022.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE